NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARIE MAHOTIERE,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN<br>Acting Commissioner of Social Security,<br><br>Defendant. | Civil Action No. 14-4312 (JLL)<br><br>OPINION |

**LINARES**, District Judge.

This matter comes before the Court upon the appeal of Marie Mahotiere ("Plaintiff") from the final determination by Administrative Law Judge ("ALJ") Joel H. Friedman upholding final decision of the Commissioner denying Plaintiff's application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). After reviewing the submissions of both parties, for the following reasons, the final decision of the Commissioner is **affirmed**.

I.      BACKGROUND[1]

     A.      Procedural History

Plaintiff filed an application for SSI and DIB on September 21, 2009, alleging disability as of May 1, 2007. (Pl. Br. at 1). Plaintiff's claim was denied initially on February 2, 2010 and on reconsideration on July 21, 2010. Id. On appeal, Plaintiff's claim was approved after a hearing with an ALJ on October 26, 2011. Id. On December 22, 2011, the Appeals Council

---

[1] The facts set-forth in this Opinion are taken from the parties' statements in their respective moving papers and the transcript of the record.

issued a notice on its own motion that it was reviewing the ALJ's decision and on April 26, 2012, issued an Order for remand. Id. at 1-2. Plaintiff's claim was denied after the second hearing before the ALJ judge on January 18, 2013. Id. at 2. At this hearing, testimony was taken from Vocational Expert ("VE"), Dr. Pat Green. On May 9, 2014, the Appeals Council denied review, thereby affirming the decision of the ALJ as the final decision of the Commissioner. Id. at 2. Subsequently, Plaintiff commenced the instant action on July 9, 2014. Id.

    B.    Factual History

        1.    Plaintiff's Testimony

At the time of her initial hearing, Plaintiff was 52 years old. (Pl. Br. at 2). She alleges that her headaches have been affecting her for two years and limit her daily activities. Id. at 3. She claims to suffer from these headaches up to three times a week and claims that they can last all day, requiring her to sleep to relieve the pain. Id. at 4. She also claims that she has pain and swelling in her hands and feet due to cramping and stiffness, which prevents her from driving, lifting more than four pounds, or walking for more than three minutes without stopping to rest. Id. Plaintiff walks with a prescribed cane because she claims she feels dizzy when she walks and from her medications. Id. She wears prescribed hand braces due to her carpal tunnel syndrome. Id.

Plaintiff also suffers from asthma and experiences shortness of breath, for which she takes medications. Id. at 5. She reports high blood sugar, headaches, blurred vision, and dry mouth as symptoms of her uncontrolled diabetes. Id. She also describes shoulder pain and difficulty in lifting her arm. Id. At her second hearing in 2013, Plaintiff again testified that her diabetes were uncontrolled and continued to complain of dizziness, hand cramping, headaches, dry mouth, nausea, difficulty with balance, and blurred vision. Id.

2. <u>Medical Evidence</u>

Plaintiff first complained of mental health symptoms to her primary health providers in 2009 and early 2010. <u>Id.</u> at 7. In 2011, Dr. V. Limmo at the Community Psychiatric Institute diagnosed her with major depressive disorder. <u>Id.</u> at 8. Plaintiff was also referred to and participated in a day program for supportive mental health five times a week from May 2011 through January 2012 but continued to display a lack of insight into her illness impulsivity, poor social skills, and manic behavior. <u>Id.</u>

On June 6, 2012, Dr. Marc Friedman, Ph. D. performed a mental status exam on behalf of the Commissioner. <u>Id.</u> at 9. He also diagnosed her with major depressive disorder, with a GAF of 55. In a medical source statement dated June 11, 2012, he indicated that Plaintiff had moderate limitations in understanding, remembering, and carrying out complex instructions and making judgments on complex decisions and in interacting appropriately with the public, supervisors, and co-workers. <u>Id.</u>

In 2007, Plaintiff received primary and endocrinology care through University Hospital Clinic. <u>Id.</u> at 10. Endocrinologist Dr. Bleich observed poorly controlled diabetes with complications of retinopathy, hyperlipidemia, constipation, numbness in hands and feet, and neuropathic pain. <u>Id.</u> Dr. Raghuwanshi provided a diagnosis of uncontrolled diabetes, diabetic retinophy, hyperlipidemia, dermatopathy, and vitamin D deficiency. <u>Id.</u> In 2009, Dr. Hidalgo diagnosed Plaintiff with migraines, diffuse joint pain and possible diabetic neuropathy. <u>Id.</u> at 11. Dr. Raghuwanshi also observed decreased sensation and an antalgic gait and prescribed a cane to assist with ambulation. <u>Id.</u> An EMG revealed generalized length-dependent axonal sensorimotor polyneuropathy, as well as bilateral mild carpal tunnel syndrome. <u>Id.</u> Also in

2009, Plaintiff was diagnosed with right trochanteric bursitis and right shoulder impingement by Dr. Altschuler and was referred for physical therapy. Id. Despite physical therapy, Plaintiff continued to complain of pain, including in her lower extremities. Id. She also continued to have symptoms of neuropathy, dizziness, nocturia, and paresthesias due to her uncontrolled diabetes. Id.

From 2008 through 2010, Dr. Daniel Perlman treated Plaintiff for asthma and seasonal/perennial allergic rhinitis. Id. at 12. In June 2007, following a routine eye examination, Dr. Daniel Desrivieres ruled out diabetic retinopathy, but diagnosed Plaintiff with an astigmatism and presbyopia. Id. at 13. In January 2010, Dr. Christina Zolli, a consultative medical examiner hired by the Commissioner, diagnosed Plaintiff with vision affected by partial cataracts, astigmatism and presbyopia. Id. On July 8, 2010, Dr. Algernon Phillips, on behalf of the Commissioner, reviewed Plaintiff's medical record and stated her eye impairment was not severe. Id. at 16. Plaintiff also visited the ERs at both University Hospital and East Orange General Hospital several times from 2007 to 2010 for various complaints and has had an appendectomy, and an incision and drainage for cellulitis and an abscess. Id. at 13 – 14.

On January 14, 2010, Dr. Changaramk Sivadas, a consultative medical examiner hired by the Commissioner, performed a physical examination on Plaintiff and observed a normal gait and station, normal neurological results except for impaired monofilament sensation over her feet, normal reflexes, responses, and vibration sense. (Def. Br. at 9). After reviewing the medical record, he diagnosed Plaintiff with uncontrolled diabetes with peripheral neuropathy, diabetic neuropathy by history, chronic low back and right hip pain, controlled hypertension, migraine headaches, controlled asthma, hypercholesterolemia, and GERD. (Pl. Br. at 9). On June 6, 2010, Dr. Rahel Eyassu, also a consultative medical examiner hired by the Commissioner, performed a

physical examination on Plaintiff and observed a slightly wide-based gait, movement at a reasonable pace, unsteady tandem walking, full range of motion and full strength in all extremities, and decreased pinprick sensation over Plaintiff's fingertips and alongside Plaintiff's right foot. (Pl. Br. at 17, Def. Br. at 9). He diagnosed Plaintiff with neuropathy, probably diabetic; probable mild diabetic retinopathy by history, poorly controlled diabetes mellitus type 2, stable hypertension, and mild intermittent asthma. (Pl. Br. at 17). He also completed a medical source statement that indicated that Plaintiff could occasionally lift and carry up to 20 pounds, could sit 5 hours, stand 3 hours, walk 3 hours within an 8 hour day, was limited to frequent handling, was limited to occasional fingering, feeling, pushing, and pulling, and could only occasional use her feet. Id.

On February 2, 2010, Dr. Mohammad Rizwan issued a written function capacity assessment on behalf of the Commissioner. Id. at 15. He wrote that she could lift 20 pounds occasionally, 10 pounds frequently, could stand for 6 hours a day, could sit for 6 hours a day, and had no postural limitations. Id. at 16. Dr. A. Przybyla affirmed Dr. Rizwan's RFC assessment in a case analysis based on the record. Id.

On December 26, 2012, Dr. Gerard Galst responded to medical interrogatories regarding Plaintiff's physical impairments on the basis of the medical record. He opined that there was little objective evidence in the record of any substantive musculosketal or neurological dysfunction or substantive impairment due to asthma or headaches, which he believed were possibly migraines or tension headaches. (Def. Br. at 12). He noted that Plaintiff had type 2 diabetes; mild and well-controlled hypertension; no medical evidence of diabetic retinopathy; a mild distal sensory impairment, possibly due to diabetes; mild carpal tunnel syndrome, for

which Plaintiff had been prescribe night-time wrist splints; and no evidence of hand weakness or impaired dexterity apart from a mild decrease in touch sensation. (Def. Br. at 11, Pl. Br. at 18).

Finally, on May 18, 2012, Dr. Patrick Foye, on behalf of the Plaintiff, performed a full medical examination and completed his own medical source statement. He diagnosed Plaintiff with uncontrolled diabetes, mellitus, diabetic peripheral neuropathy with balance deficits, right shoulder pain secondary to rotator cuff tendonitis, asthma, partial cataracts, GERD, and migraine headaches. (Pl. Br. at 18 – 19). His medical source statement reported that Plaintiff had a normal range of motion in her spine and cervical spine, low back pain, facet and sacroiliac pain, a normal gait, full strength and normal reflexes in her upper and lower extremities, and some numbness in her extremities. (Def. Br. at 5). He also noted that Plaintiff walked without an assistive device. Id. He determined that Plaintiff could lift or carry 10 pounds occasionally and less than 10 pounds frequently; that she could stand and walk less than 2 hours a day with an assistive device; she must alternative between sitting and standing; that pushing and pulling was limited; she could never perform postural activities; she had limited reaching, fingering, feeling, and seeing; and environmental limitations. (Pl. Br. at 19).

    3.    <u>VE Testimony</u>

The ALJ asked vocational expert Dr. Pat Green to consider several hypotheticals at Plaintiff's second hearing. (Pl. Br. at 6). The first hypothetical included, in addition Plaintiff's age, education, and work history, a limitation of a light exertional level, no exposure to hazards, fumes, odors, or respiratory irritants, avoidance of ladders, ropes, and scaffolds, and a limitation to simple routine jobs in a low contact setting. Id. Dr. Green testified that three jobs existed within those parameters in significant numbers. Id. The second hypothetical included the need to avoid fine detailed work, which the ALJ clarified as "reading off a computer monitor." Id.

Dr. Green testified that such an individual could perform the previously listed jobs. The third hypothetical included the ability to speak and understand English but "difficulties as far as conversation." Id. Dr. Green testified that the listed jobs did not involve a significant amount of conversation. Id. Fourth, the ALJ posed the original hypothetical, but with a sedentary exertional level limitation and the restriction on fine detailed work. Id. Dr. Green testified that two jobs existed within those parameters in significant numbers. Id. Finally, the ALJ added the limitations of managing concentration, persistence, and pace on even a simple routine job for two hours. Dr. Green testified that there were no jobs that the individual could perform. Id. at 7.

## II.   STANDARD OF REVIEW

The standard of review for this Court is whether the ALJ's decision is based on substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Although the Social Security Act is a remedial statute that should be broadly construed, the "substantial evidence" standard is a deferential one and the ALJ's decision must be affirmed if supported by "more than a mere scintilla . . . . but less than a preponderance." See Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004); Woody v. Sec'y of Health & Human Servs., 859 F.2d 115, 1159 (3d Cir. 1988). Substantial evidence includes objective medical facts, diagnoses or medical opinions based on those facts, subjective evidence obtained or disability testified to by the claimant, and the claimant's age, education and work experience. Curtin v. Harris, 508 F. Supp. 791 (D.N.J. 1981). The ALJ must specifically indicate why particular evidence was rejected. See Burnett v. Comm'r of Soc. Sec, 220 F.3d 112, 121 (3d Cir. 2000) (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)).

## III. APPLICABLE LAW

The Social Security Administration has developed a five-step evaluation process to determine whether an individual is disabled. 20 C.F.R. § 404.1520. The ALJ must consider whether the claimant is engaged in any "substantial gainful activity," whether he suffers from a severe impairment, and whether the impairment meets or medically equals the severity of a listed impairment. 20 C.F.R. §§ 404.1520(a)(4)(i) - (iii), 404.1520 (d). If the impairment meets or medically equals the severity of a listed impairment then the claimant automatically qualifies for disability benefits. 20 C.F.R. §§ 404.1520 (a)(4)(iii), 404.1520 (d). If not, the ALJ must determine the claimant's RFC and evaluate whether the claimant can return to his past relevant work or perform any other work present in significant numbers in the national economy.

## IV. DISCUSSION

Plaintiff argues that the ALJ failed to properly weigh medical opinion evidence because he did not provide adequate reasons for rejection and favored the opinions of non-examining physicians over those of treating and examining physicians. Plaintiff also argues that the ALJ erred at step four by failing to make a RFC determination that reflected all of Plaintiff's limitations. Furthermore, Plaintiff asserts that the ALJ erred in failing to find Plaintiff's neuropathy and headaches severe, committing errors at steps two through five.

### I. THERE IS SUBSTANTIAL EVIDENCE SUPPORTING THE ALJ'S DECISION REGARDING THE APPROPRIATION OF WEIGHT TO MEDICAL OPINION EVIDENCE.

Medical opinions are "statements from physicians . . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927 (a) (2). The ALJ must consider all medical opinions in a claimant's case record. 20

C.F.R. § 416.927. Although more weight is generally given to treating sources, other factors to consider in determining how to weigh evidence from medical sources include (1) the examining relationship, (2) the treatment relationship, including the length, frequency, nature, and extent of the treatment, (3) the supportability of the opinion, (4) its consistency with the record as a whole, and (5) the specialization of the individual giving the opinion. 20 C.F.R. § 404.1527(c). Ultimately, however, it is the ALJ's exclusive responsibility to evaluate medical opinions and judge whether they are supported by and consistent with the rest of the record. Richardson v. Perales, 402 U.S. 389, 399 (1971).

Plaintiff alleges that the ALJ decision erred in rejecting medical opinions regarding Plaintiff's diabetic neuropathy and headaches. This Court does not agree. For the reasons set forth below, the court finds that the ALJ provided sufficient reasoning for his discounting of Dr. Foye's opinion and his assignment of great weight to Drs. Rizwan and Galst's opinions and properly relied and considered all other medical evidence when making his determination.

  A. <u>Dr. Rizwan and Dr. Galst's opinions were more supportable and consistent with the record than Dr. Foye's opinion.</u>

The ALJ must consider, when determining the supportability of medical opinion evidence, the quantity of medical sources, particularly medical signs and laboratory findings, and the quality of the explanation. 20 CFR § 404.1527 (c) (3). While Dr. Foye's opinion did include a physical examination of Plaintiff, it was not supported by his own examination findings. Specifically, the ALJ noted that Dr. Foye's physical examination showed normal lumbosacral range of motion; a normal, non-limping gait, no excessive postural shifts, no apparent distress, normal range of motion of the cervical spine, normal strength in all extremities, and no neurological deficits aside from subjective decreased sensation. (R. at 26). The ALJ found these results inconsistent with Dr. Foye's restrictive assessment of Plaintiff. Id. Furthermore, Dr.

Foye's medical source statement explained his extremely restrictive assessment of Plaintiff's postural limitations with a broad statement, "Poor balance/abilities due to diabetic peripheral neuropathy." (R. at 1107). The ALJ noted that these explanations were based largely on Dr. Foye's interpretation of the medical record and Plaintiff's subjective complaints. (R. at 26).

To the contrary, Dr. Rizwan, the state agency physician, provided specific facts from Plaintiff's medical record to support his assessment of Plaintiff's light RFC with environmental limitations. Id. Further, Plaintiff's diabetes mellitus, paresthesia findings in hands and feet and history of asthma were considered by the ALJ. Id. Similarly, medical expert Dr. Galst supported his opinion with specific objective findings. Id. For example, the ALJ noted that Dr. Galst found that there was little objective evidence support significant musculoskeletal or neurologic dysfunction because her complaints of dizziness due to high blood pressure were not substantiated as her hypertension was well controlled. Id. at 25.

Additionally, Plaintiff's assertions that Dr. Foye's opinion is consistent with the medical record is unfounded. The medical record did establish that Plaintiff had a history of headaches and diabetic neuropathy, but other physicians, including Drs. Rizwan, Przybala, and Galst, still determined that Plaintiff could perform a limited range of work. Moreover, state agency physicians merit significant consideration in the disability analysis. See 20 C.F.R. §§ 404.1527 (e) (2) (i) (stating that state agency physicians are "highly qualified" and "experts" in social security disability evaluations). Drs. Rizwan, Przybala, and Galst were all state agency physicians, while Plaintiff hired Dr. Foye as an independent consultant. As such, the ALJ was entitled to rely heavily on Dr. Rizwan and Dr. Galst's opinions. Accordingly, the ALJ provided significant reasoning for his accordance of greater weight to Dr. Rizwan and Dr. Galst's opinions than to Dr. Foye's opinion.

B.  The ALJ relied on and considered the opinions of Dr. Essayu, Dr. Sivadas, Dr. Galst, Dr. Khan, and the various physicians from University Hospital; he did not reject the opinions outright.

Regarding Plaintiff's complaints of diabetic peripheral neuropathy, the ALJ specifically noted that there was evidence of a mild distal impairment in her hands and impaired sensation over Plaintiff's feet. (R. at 24-25). Therefore, the ALJ considered the medical evidence from the physicians at University Hospital, Dr. Essayu, Dr. Sivadas, and Dr. Galst and did not reject them outright. However, the ALJ also reported that there was other medical evidence that Plaintiff had no hand weakness or impaired dexterity, that she continued to enjoy knitting and making necklaces, suggesting intact finger dexterity, normal vibration senses, normal deep tendon reflexes, normal planter responses, a full range of motion in the lower extremities and normal strength. Id. Accordingly, the ALJ found that due to the aforementioned evidence, Plaintiff's diabetic neuropathy did not amount to the level of a severe impairment.

Similarly, the ALJ acknowledged that Plaintiff had a history of headaches and has been prescribed Fioricet and therefore considered and did not reject outright the medical opinions of Drs. Khan, Sivadas, Galst and the various physicians from University Hospital regarding Plaintiff's complaints of headaches. (R. at 25). However, substantial evidence that the ALJ relied on in concluding that the headaches were not severe told a different story, including a normal CT, no evidence of any related aura, or light sensitivity. Id. Additionally, the ALJ is not required to adopt all limitations assigned by a medical opinion, even if the ALJ assigns the medical opinion significant weight. Wilkinson v. Comm'r of Soc. Sec., 558 Fed. App'x 254, 2014 WL 80925, at *2 (3d Cir. March 5, 2014). Therefore, Plaintiff's argument that by finding no severe diabetic neuropathy or severe headaches, the ALJ impliedly rejects the medical opinions of these physicians, is erroneous because he did rely on and consider the medical opinions of the various

physicians when coming to his determination. It is in the purview of the ALJ to make these judgments and this Court cannot substitute its own conclusions for those of the fact-finder when the ALJ's determination is supported by substantial evidence.

II. THE ALJ'S RFC ASSESSMENT IS SUPPORTED BY SUBSTANTIAL EVIDENCE BECAUSE IT ADEQUATELY ACCOUNTED FOR ALL OF PLAINTIFF'S CREDIBLY ESTABLISHED FUNCTIONAL LIMITATIONS, INCLUDING HER SUBJECTIVE COMPLAINTS THAT WERE SUPPORTED BY THE EVIDENCE.

The RFC is an administrative finding that the ALJ is solely responsible for determining, based on consideration of the record as a whole. 20 C.F.R. § 404.1527(e). In determining a claimant's RFC, the ALJ must consider all medically determinable impairments, whether severe or non-severe. Slaughter v. Astrue, 2008 U.S. Dist. LEXIS 16954, *14 (D.N.J. Mar. 3, 2008). Furthermore, the ALJ retains the discretion to make a credibility judgment, "determining the extent to which a claimant is accurately stating the degree of pain or the extent to which he is disabled by it." Id., citing Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir.1999). A subjective complaint alone cannot establish disability; objective medical evidence must be provided. 20 C.F.R. § 404.1529(a). In the case of conflicting evidence, the ALJ may reject a claim if he provides "explanation" for the rejection. Slaughter, 2008 U.S. Dist. LEXIS 16594, at *14.

Plaintiff alleges that the ALJ erred in his determination that Plaintiff retained the RFC to perform a modified range of light, unskilled work because he did not properly analyze the limitations related to her symptoms from neuropathic pain, headaches, dizziness, and balance difficulties. The Court finds that the ALJ provided substantial evidence regarding his determination that all of Plaintiff's complaints were not fully credible and there is substantial

evidence that the ALJ's RFC assessment adequately accounted for all of Plaintiff's credibly established functional limitations.

The ALJ provided extensive reasoning as to why, based on the entirety of the medical record, he did not find many of Plaintiff's subjective claims of impairment to be credible. Regarding Plaintiff's headaches, the ALJ noted that results of a head CT were normal, there was no evidence of any related aura, or light sensitivity. (R. at 25). The ALJ explained that Plaintiff's claims of dizziness and subsequent imbalance were not also substantiated as her hypertension was controlled. (R. at 25). The ALJ further noted that Plaintiff's claim of extensive neuropathic pain was not entitled to minimal weight as medical examiners found that she had full range of motion, normal strength, normal reflexes, etc. (R. at 24 – 25). Ultimately, the ALJ determined that Plaintiff's neuropathic pain had no more than a minimal effect on her ability to do basic work activities. (R. at 25). Accordingly, there is no merit to Plaintiff's contention that her symptoms were not properly evaluated as the ALJ's determination of Plaintiff's RFC is supported by substantial evidence.

Finally, the ALJ, even after determining Plaintiff's subjective claims were not credible in their entirety, took into consideration all of her claims of impairment. (R. at 27). This is evidenced by the fact that the ALJ limited Plaintiff's RFC to light work with additional postural, environmental, and mental restrictions. (R. at 26 – 27).

### III. THE ALJ'S DETERMINATION THAT PLAINTIFF'S NEUROPATHY AND HEADACHES ARE NOT SEVERE IS SUPPORTED BY SUBSTANTIAL EVIDENCE.

Step two of the sequential evaluation process asks whether a claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 C.F.R. §404.1520 (c). In the Social Security context, "severe" impairments significantly limit an

individual's ability to perform basic work activities. 20 C.F.R. § 404.1520 (c). Basic physical work activities include walking, sitting, lifting, pushing, pulling, reach, carrying, or handling. Id. Basic mental work activities include understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521. The burden of proof is on the claimant to prove that her impairments are severe. Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987).

Plaintiff alleges that the ALJ erred in finding Plaintiff's neuropathy and headaches not severe. As discussed at length above, the ALJ explained that Plaintiff was treated conservatively, had no hand weakness, continued to enjoy daily activities that indicated finger dexterity, walked with normal gait and station, had normal reflexes and responses and strength, and that her headaches were unsupported by specific neurological findings. (R. at 24 – 25). Accordingly, there is substantial evidence to support the ALJ's finding that Plaintiff's neuropathy and headaches were non-severe.

Therefore, this Court finds that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence. As such, the final decision of the Commissioner is affirmed.

## V. CONCLUSION

For the foregoing reasons, the decision of the Commissioner is **affirmed**. An appropriate order follows this Opinion.

DATED: 1 of July, 2015.

JOSE L. LINARES
U.S. DISTRICT JUDGE